UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFAEL RODRIGUEZ,

                Petitioner,

    -v-

JOSEPH SMITH, *Superintendent, Shawangunk Correctional Facility*,

             Respondent.

No. 10-CV-8306 (KMK) (LMS)

<u>ORDER ADOPTING REPORT & RECOMMENDATION</u>

<u>Appearances</u>:

Rafael Rodriguez
Wallkill, NY
*Pro Se Plaintiff*

Carrie Anne Ciganek, Esq.
District Attorney of Rockland County
New City, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

        Petitioner Rafael Rodriguez ("Petitioner"), proceeding pro se, files this Petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction for attempted rape in the first degree in violation of N.Y. Penal Law §§ 110.00, 130.35(1), two counts of sexual abuse in the first degree, in violation of N.Y. Penal Law § 130.65(1), and two counts of unlawful imprisonment in the second degree, in violation of N.Y. Penal Law § 135.05. (*See* Pet. Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By A Person in State Custody ("Pet.") ¶ 5 (Dkt. No. 3).)  Petitioner was sentenced to 13 years' imprisonment and five years' post-release supervision for the attempted rape conviction, five years' imprisonment for each of the sexual abuse convictions, and one year imprisonment for each of the unlawful imprisonment

convictions, all of which were to run concurrently.  (*See* Aff. of Carrie A. Ciganek in Opp'n ("Ciganek Aff.") ¶ 6 (Dkt. No. 9); *see also* September 18, 2007 Sentence Tr. ("Sentence Tr.") 22–23 (Dkt. No. 26).)  Petitioner seeks habeas relief on the following grounds: (1) Petitioner's trial counsel was ineffective for failing to argue that certain statements should be suppressed because he did not understand the *Miranda* warnings given to him; (2) the sexual abuse counts in the Indictment were not sufficiently detailed to provide Petitioner with fair notice of the charges against him; (3) the trial court failed to meaningfully respond to the jury's questions regarding the sexual abuse charges, which deprived Petitioner of a fair trial; (4) there was insufficient evidence to support the conviction of attempted rape in the first degree; and (5) Petitioner's sentence was harsh and excessive, in violation of the Eighth Amendment.  (Pet. ¶ 12 & Attachment A.)  The case was referred to Magistrate Judge Lisa Margaret Smith, who issued a Report and Recommendation (the "R&R"), recommending that the Court deny the Petition.  (*See* R&R (Dkt. No. 35).)  Petitioner filed timely objections to the R&R (the "Objections"), pressing the arguments listed above.  (*See* Pet'r's Obj's to R&R ("Pet'r's Obj's") (Dkt. No. 37).)  For the reasons stated herein, the Court adopts the R&R in substantial part, modifies it in part, and denies Petitioner's request for habeas relief.

## I.  BACKGROUND

The factual and procedural background of this case is set forth in the R&R and the Court assumes the Parties' familiarity therewith.  (*See* R&R 2–5.)  The Court nevertheless summarizes the pertinent facts.  As relevant to Petitioner's request for habeas relief, Petitioner was convicted for events in connection with the sexual assault of Rosa Cabezas ("Cabezas") in Spring Valley, New York on January 2, 2007.  (*See* Mem. of Law in Opp'n to Pet. For a Writ of Habeas Corpus

("Resp't's Habeas Mem.") 2 (Dkt. No. 9); Ciganek Aff. Ex. A ("Indictment").)[1]  Petitioner kept Cabezas in her bedroom for over two hours while he forcibly removed her clothing, restrained her, touched her breasts and vagina with his hands and penis, and penetrated her vagina with his penis, all against her will.  (Resp't's Habeas Mem. 2.)  Cabezas eventually locked herself in the bathroom, called for help from the window, and, after the neighbors called the police, the police arrived and used a ladder to rescue Cabezas from the window.  (*Id.*)  When the police arrived at the scene, Petitioner was gone.  (*Id.*)  Petitioner was arrested later that day and gave written and videotaped statements that were consistent with the victim's account of events.  (*Id.*)

On January 16, 2007, by Indictment No. 2007-7, a Rockland County grand jury charged Petitioner with one count of rape in the first degree, in violation of N.Y. Penal Law § 130.35(1), one count of rape in the third degree, in violation of N.Y. Penal Law § 130.25(3), two counts of sexual abuse in the first degree, in violation of N.Y. Penal Law § 130.65(1), two counts of unlawful imprisonment in the second degree, in violation of N.Y. Penal Law § 135.05, and two counts of assault in the third degree, in violation of N.Y. Penal Law § 120.00(1).  (Indictment; *see also* Resp't's Habeas Mem. 2.)  After a jury trial before Judge Catherine M. Bartlett of the County Court of Rockland County, Petitioner was convicted of attempted rape in the first degree in violation of N.Y. Penal Law §§ 110.00, 130.35(1), two counts of sexual abuse in the first degree, in violation of N.Y. Penal Law § 130.65(1), and two counts of unlawful imprisonment in the second degree, in violation of N.Y. Penal Law § 135.05.  (*See* July 27, 2007 Trial Tr. ("July 27 Tr.") 464–66 (Dkt. No. 12); *see also* Resp't's Habeas Mem. 1.)

---

[1] Petitioner was also convicted of one count of unlawful imprisonment of Cabezas for an incident occurring on December 31, 2006.  (*See* Indictment at unnumbered 3.)

On direct appeal, Petitioner, represented by counsel, argued that: (1) the two counts of the Indictment charging sexual abuse in the first degree were jurisdictionally defective and should have been dismissed and the bill of particulars did not cure the defect; (2) the trial court's failure to meaningfully respond to the jury's questions regarding the sexual abuse charges seriously prejudiced Petitioner and deprived him of his due process rights to a fair trial; (3) the prosecution failed to prove Petitioner's guilt of attempted rape in the first degree beyond a reasonable doubt because the evidence was legally insufficient; and (4) Petitioner's sentence was harsh and excessive.  (*See* Ciganek Aff. ¶ 7; *id.* Ex. B (Appellant's Brief ("Appellant's Br.")) i-iii.)  The Respondent filed a brief in opposition, (Ciganek Aff. Ex. C (Brief for Resp't ("Appellee's Br."))), and Petitioner filed a reply, (Ciganek Aff. Ex. D (Appellant's Reply Brief ("Appellant's Reply"))).  The Appellate Division affirmed Petitioner's conviction on May 5, 2009.  *People v. Rodriguez*, 880 N.Y.S.2d 89 (App. Div. 2009).  The New York Court of Appeals denied Petitioner leave to appeal on August 13, 2009.  *People v. Rodriguez*, 914 N.E.2d 1020 (N.Y. 2009).

On or about July 5, 2009, Petitioner filed a petition, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, seeking to vacate the judgment of conviction on the ground that he was denied effective assistance of counsel when his trial counsel failed to: (1) elicit important facts and make the necessary argument to obtain suppression because the proof at the *Huntley* hearing did not establish that Petitioner understood his *Miranda* warnings; and (2) research and apply the law regarding unnecessary delay of arraignments in violation of Petitioner's federal and state constitutional right to counsel.  (*See* Ciganek Aff. ¶ 10 & Ex. G (Defendant's CPL § 440.10 Motion ("Def.'s § 440.10 Motion")).)  The Rockland County Court

denied Petitioner's motion to vacate on September 17, 2009.  (*See* Ciganek Aff. ¶ 11 & Ex. J

("Rockland County September 17 Order").)

As noted above, on November 3, 2010, Petitioner filed the Petition.  (*See* Dkt. No. 3.)

Magistrate Judge Smith issued the R&R, recommending that the Court deny Petitioner's request

for relief and dismiss the Petition in its entirety.  (*See* R&R 2.)  Petitioner subsequently filed his

Objections.  (*See* Dkt. No. 37.)

## II.  DISCUSSION

### A.  Applicable Law

#### 1.  Standard of Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of

Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and

recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and

must be made "[w]ithin 14 days after being served with a copy of the recommended disposition,"

*id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant

to Federal Rules of Civil Procedure 5(b)(2)(C)-(F), *see* Fed. R. Civ. P. 6(d), for a total of

seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

Where a party timely submits objections to a report and recommendation, as Petitioner

has done here, the district court reviews de novo the parts of the report and recommendation to

which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  In contrast, "[a]

district court evaluating a magistrate judge's report may adopt those portions of the report [and

recommendation] to which no 'specific, written objection' is made, as long as the factual and

legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y.S. Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)).  Because Petitioner is proceeding pro se, the Court construes his pleadings to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

### 2.  Habeas Corpus

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'"  *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (citing 28 U.S.C. § 2254(d)(1)–(2)).  In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner."  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1411 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the California Supreme Court to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we . . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same). Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a

district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Accordingly, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other*

8

grounds, *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is presented in a way that is "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d at 192, and the state courts are "apprised of both the factual and the legal premises of the claim [the petitioner] asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (alteration in original) (internal quotation marks omitted); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same). In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement. *Daye*, 696 F.2d at 194. However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted). Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein*, 667 F.2d at 282; *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). If the petitioner fails to exhaust his or her state remedies through this entire appeal process, he or she may still fulfill the

exhaustion requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at *3 (S.D.N.Y. Sept. 18, 2014); *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 28, 2012); *Torres v. McGrath*, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006); *Rivera v. Conway*, 350 F. Supp. 2d 536, 544 (S.D.N.Y. 2004).  For example, in New York a defendant may challenge the conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. C.P.L. § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

In addition, New York permits only one application for direct review.  *See* N.Y. Court Rules § 500.20(a)(2); *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] . . . .").  New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals.  *See Sparks*, 2012 WL 4479250, at *4.  Accordingly, in those situations a petitioner no longer has any available state court remedy, and the unexhausted claims are therefore deemed exhausted, but procedurally barred.  *See Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must

deem the claim procedurally defaulted." (alteration and internal quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted is "cold comfort").  A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Aparicio*, 269 F.3d at 90.  "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default," or a showing that the petitioner "is actually innocent of the underlying offense . . . .").

### B.  Application

#### 1.  Jurisdictionally Defective Indictment

First, Petitioner objects to Magistrate Judge Smith's conclusion that "the [I]ndictment gave Petitioner fair notice of the charges against him within the meaning of the Constitution, enabling him to respond to the counts as well as defend against double jeopardy."  (R&R 8–9; *see* Pet'r's Obj's 1, 4–8.)  As an initial matter, Petitioner raised the claim that the Indictment provided insufficient notice in the trial court, (*see* July 26, 2007 Trial Tr. ("July 26 Tr.") 440–44), and on direct appeal, *see Rodriguez*, 880 N.Y.S.2d at 89.  In particular, Petitioner argued that the two counts charging sexual abuse in the first degree were jurisdictionally defective because they did not specify the type of sexual contact Petitioner allegedly had with the victim. (*See* Appellant's Br. 29–36.)  Moreover, as noted above, the New York Court of Appeals denied Petitioner leave to appeal on August 13, 2009.  *See Rodriguez*, 914 N.E.2d at 1020.

11

Accordingly, as Magistrate Judge Smith found, this claim is exhausted and not procedurally barred.  (*See* R&R 7.)[2]

It is worth noting that "[c]hallenges to the sufficiency of a state indictment are generally not cognizable on habeas review."  *Roman v. Napoli*, No. 08-CV-6561, 2010 WL 4922627, at *8 (W.D.N.Y. Dec. 2, 2010) (internal quotation marks omitted) (collecting cases).  For example, if an indictment's only defect is compliance with a state statutory requirement, it is no grounds for habeas relief.  *See, e.g.*, *O'Halloran v. Gonyea*, No. 11-CV-346, 2015 WL 93716, at *20 (N.D.N.Y. Jan. 7, 2015) (holding that petitioner's claim that amendment of an indictment violated New York Criminal Procedure Law was not cognizable on habeas review); *Velazquez v. Poole*, 614 F. Supp. 2d 284, 330–31 (E.D.N.Y. 2007) (rejecting habeas petitioner's claim that he was denied due process where the indictment failed to satisfy certain state statutory requirements because a claim based on state procedural law is not cognizable on federal habeas review).  "Rather, claims based on a defective indictment are only reviewable by a habeas court if the indictment fails to satisfy the basic due process requirements: notice of the time, place, and essential elements of the crime."  *Napoli*, 2010 WL 4922627, at *8 (internal quotation marks omitted); *see also Voymas v. Unger*, No. 10-CV-6045, 2011 WL 2670023, at *4 (W.D.N.Y. July 7, 2011) ("Challenges to state indictments will merit habeas corpus relief only in the exceptional case where the indictment fails to satisfy the basic due process requirements:  notice of the time, place, and essential elements of the crime.").

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation."  U.S. Const. amend.

---

[2] To be clear, Petitioner's challenge on appeal and in this proceeding is limited to the counts charging him with sexual abuse in the first degree.

VI.  "An indictment is sufficient when it charges a crime [1] with sufficient precision to inform

the defendant of the charges he must meet and [2] with enough detail that he may plead double

jeopardy in a future prosecution based on the same set of events."  *DeVonish v. Keane*, 19 F.3d

107, 108 (2d Cir. 1994) (per curiam) (internal quotation marks omitted); *see also Rosen v. United*

*States*, 161 U.S. 29, 34 (1896) (same); *Jones v. Walsh*, No. 08-CV-915, 2008 WL 2064555, at *5

(E.D.N.Y. May 12, 2008) (same).  Generally, an indictment satisfies these requirements if it

"set[s] forth the offense in the words of the statute itself, as long as 'those words of themselves

fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements

necessary to constitute the offense intended to be punished.'"  *DeVonish*, 19 F.3d at 108–09

(quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Walsh*,

194 F.3d 37, 44 (2d Cir. 1999) (noting that the Second Circuit has "consistently upheld

indictments that do little more than to track the language of the statute charged and state the time

and place (in approximate terms) of the alleged crime" (internal quotation marks omitted));

*United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975) (explaining that "an indictment

need do little more than to track the language of the statute charged and state the time and place

(in approximate terms) of the alleged crime").

      "Recognizing that particular facts needed in particular cases are obtainable by bills of

particulars or discovery," the Second Circuit has "repeatedly refused, in the absence of any

showing of prejudice, to dismiss . . . charges for lack of specificity."  *United States v. McLean*,

528 F.2d 1250, 1257 (2d Cir. 1976) (citation and internal quotation marks omitted); *see also*

*Walsh*, 194 F.3d at 45.  Thus, while discovery cannot resuscitate a defective indictment, "where

the indictment has been found even minimally sufficient, a court may look to the record as a

whole in determining whether the defendant is protected from double jeopardy in a subsequent

prosecution and whether the defendant has had an adequate opportunity to prepare his defense."

*Id.*

   In light of these standards, the Indictment charging Petitioner with two counts of sexual

abuse was sufficient.  Under New York law, "[a] person is guilty of sexual abuse in the first

degree when he or she subjects another person to sexual contact[] . . . [b]y forcible compulsion."

N.Y. Penal Law § 130.65(1).  As to each of the two counts of sexual abuse in the first degree, the

Indictment states:

> AND THE GRAND JURY AFORESAID, by this indictment, . . . accuses the
> defendant of the crime of SEXUAL ABUSE IN THE FIRST DEGREE (Sec.
> 130.65 (1) Penal Law), committed as follows:
> The defendant, in the County of Rockland, in the State of New York, on or about
> the 2nd day of January, 2007, subjected another person identified by the initials
> "R.C.", whose identity is fully known to the Grand Jury, to sexual contact by
> forcible compulsion.

(Indictment at unnumbered 2.)  Petitioner has argued that these counts are defective because they

do not describe with "sufficient precision" the actions of Petitioner that violated § 130.65.

(Appellant's Br. 31.)  In other words, there is no language in the two counts that differentiates

them. (*Id.*; Pet'r's Obj's 5.)  This claim fails.  As noted above, it is usually "sufficient that the

indictment set forth the offense in the words of the statute itself, as long as 'those words of

themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the

elements necessary to constitute the offense intended to be punished.'"  *DeVonish*, 19 F.3d at

108–09 (quoting *Hamling*, 418 U.S. at 117).  Here, there is no doubt that the language of the

Indictment tracks the language of N.Y. Penal Law § 130.65.  Moreover, it provides the

identifying initials of the person that Petitioner abused and the approximate date of and location

in which the abuse occurred.  Nothing more is constitutionally required.  *See Voymas*, 2011 WL

2670023, at *4-5 (rejecting claim that the indictment was constitutionally flawed because it did

not identify what specific acts satisfied the "forcible compulsion" element of the rape charge); *see also Best v. Kelly*, No. 88-CV-530, 1988 WL 76621, at *2 (E.D.N.Y. July 7, 1988) (same).

To support his claim of insufficient notice, Petitioner cites *People v. Keindl*, 502 N.E.2d 577 (N.Y. 1986), in which the New York Court of Appeals held that an indictment charging several "criminal sexual acts occurring over periods of time extending for as many as 10, 12[,] and 16 months" was defective insofar as "there [were] such a multiplicity of acts encompassed in single counts as to make it virtually impossible to determine the particular act of sodomy or sexual abuse as to which the jury reached a unanimous verdict." *Id.* at 580, 582.  The New York Court of Appeals explained that each count of an indictment may charge only one offense and "where one count alleges the commission of a particular offense occurring repeatedly during a designated period of time, that count encompasses more than one offense and is duplicitous." *Id.* at 580; *see also People v. Levandowski*, 780 N.Y.S.2d 384, 385 (App. Div. 2004) (citing *Keindl* to hold that the trial court erred in failing to dismiss "a 44-count indictment with rape, course of sexual conduct against a child, endangering the welfare of a child[,] and criminal contempt, all arising out of [the] defendant's continued sexual contact with his infant daughter over a six-year period" for duplicitousness).  Here, however, the Indictment did not allege that Petitioner sexually abused Cabezas repeatedly during an extended period of time, but rather alleged sexual acts that occurred on or around a single day—January 2, 2007.  Accordingly, the Indictment is not deficient under *Keindl*.  *See People v. Lopez*, 572 N.Y.S.2d 378, 379–80 (App. Div. 1991) (holding that indictment alleging defendant with sexual assault claims was sufficient even though indictment included a date range of 31 days).  Likewise, none of the other cases that Petitioner cites supports a conclusion that the Indictment was constitutionally insufficient.  *See*, *e.g.*, *People v. Raymo*, 796 N.Y.S.2d 448, 450 (App. Div. 2005) (holding that the defendant did not raise the

issue of whether a count of the indictment was "facially defective in that it [did] not specify where or when the crime occurred . . . by way of pretrial motion and ha[d], thus, failed to preserve the issue for appellate review").

To the extent that Petitioner argues the Indictment fails to provide sufficient notice because it does not identify which part or parts of the victim's body that Petitioner touched, or otherwise made contact with, (Pet'r's Obj's 6–7), this claim fails.  As noted above, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [b]y forcible compulsion."  N.Y. Penal Law § 130.65(1).  "Sexual contact," in turn, is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire."  *Id.* § 130.00(3); *see also People v. Hoffert*, 2 N.Y.S.3d 717, 718 (App. Div. 2015).  Petitioner has not pointed to any case that remains good law, nor has the Court found any such case, where an indictment has been dismissed as defective on notice grounds for failing to specify which part or parts of the victim's body was or were the object of the alleged sexual contact.  Indeed, in *People v. Jackson*, 385 N.E.2d 1296 (N.Y. 1978), the New York Court of Appeals reversed the Appellate Division, which had held that an indictment charging sodomy was legally insufficient because it "fail[ed] to state the exact nature of the deviate sexual intercourse with which defendant [was] charged."  *See People v. Jackson*, 401 N.Y.S.2d 526, 527 (App. Div.), *rev'd*, 385 N.E.2d 1296 (N.Y. 1978).  In reversing the Appellate Division, the Court of Appeals held that the indictment was not defective because it "contain[ed] all the elements of the crime" and noted that the "precise nature of the deviate sexual intercourse . . . could be, and was . . . , clarified by a bill of particulars."  *Jackson*, 385 N.E.2d at 1297.

Here, the discovery in the case, including Petitioner's own confessions, plainly notified Petitioner how the prosecution intended to prove that Petitioner subjected the victim to "sexual

contact" by "forcible compulsion."  In particular, the prosecution intended to establish, and did

offer evidence at trial, that Petitioner had sexual contact with the victim's breasts and vagina.

(*See* Resp't's Habeas Mem. 2, 10, 23–25.)  Thus, Petitioner was on notice of the prosecution's

theory as to which intimate parts of the victim that Petitioner had sexual contact.  *See, e.g.*,

*Chandler v. Moscicki*, 253 F. Supp. 2d 478, 487–88 (W.D.N.Y. 2003) (holding that petitioner

received adequate notice of his potential liability as an accomplice under the indictment where

petitioner was notified early in the proceedings that he faced criminal liability as an accomplice

and police officer's testimony at a pre-trial hearing also further supplied notice of potential

accomplice liability); *Alston v. Donnelly*, 461 F. Supp. 2d 112, 129–30 (W.D.N.Y. 2006)

(finding that petitioner's receipt of a copy of the victim's pre-trial statement detailing alleged

rape provided petitioner with sufficient actual notice of rape count to satisfy due process).

In his objection, Petitioner also suggests that the two sexual abuse counts are defective

because they are duplicitous.  (Pet'r's Obj's 5 (arguing that the "generic description" of the

criminal conduct alleged in the two sexual abuse counts fell "short" of the "requirements needed

to . . . keep the indictment from being [d]uplici[t]ous").)  An indictment is duplicitous "if it joins

two or more distinct crimes in a single count."  *Walsh*, 194 F.3d at 46 (internal quotation marks

omitted).  However, this is the very first time that Petitioner has raised such a challenge to these

counts in the Indictment.  As noted above, Petitioner's *only* challenge to these two counts in state

court was that they were "jurisdictionally defective" because they failed to "specify the type of

sexual contact" Petitioner allegedly made with the victim.  (Appellant's Br. 29.)  Indeed, as

noted below, Petitioner explicitly disclaimed any challenge to these counts as multiplicitous, and

made no mention that he was, instead, claiming that these counts were duplicitous.  (Appellant's

Reply 1.)  Not surprisingly, therefore, the only claim considered by the Appellate Division was

whether the counts were jurisdictionally defective because they failed to provide sufficient notice of the criminal conduct giving rise to the charges. *See Rodriguez*, 880 N.Y.S.2d at 89 ("[T]hose counts of the indictment cited the applicable sections of the Penal Law and sufficiently tracked the language thereof to afford the defendant fair notice of the charge against him and, thus, were not jurisdictionally defective.")  Because Petitioner never raised, or even hinted at, a duplicitous challenge to these counts, let alone one based on the federal constitution, his claim is unexhausted, but procedurally barred. *See Weber v. Haggett*, Nos. 09-CV-174, 09-CV-221, 2010 WL 8356362, at *17-19 (N.D.N.Y. July 2, 2010) (considering merits of challenge to sexual abuse count on claim that the count was "overly broad and unduly vague," but holding that the duplicitous challenge to the same count was unexhausted and procedurally barred because petitioner did not move to dismiss that charge before trial), *adopted by* 2012 WL 264170 (N.D.N.Y. Jan. 30, 2012); *accord Olmos v. Ryan*, No. 11-CV-344, 2012 WL 8466125, at *6 (D. Ariz. Dec. 19, 2012) (rejecting claim that sexual abuse charge was duplicitous because, while the petitioner argued in state court that the charge was duplicitous, "he did not frame his arguments as federal claims"), *adopted in part by* 2013 WL 3199831 (D. Ariz. June 24, 2013).

Finally, it is worth noting that Petitioner's Objections could be interpreted as arguing that the Indictment was multiplicitous.  "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *Walsh*, 194 F.3d at 46 (internal quotation marks omitted); *see also Timmons v. Lee*, No. 10-CV-1155, 2010 WL 3813963, at *9 (E.D.N.Y. Sept. 23, 2010) (applying this definition in review of habeas petition under § 2254); *Castillo v. Walsh*, 443 F. Supp. 2d 557, 566 (S.D.N.Y. 2006) (in resolving a § 2254 petition, explaining that "[a]n indictment is multiplicitous under New York law when one offense is charged in more than one count").  "The

18

multiplicity doctrine is based upon the double jeopardy clause of the Fifth Amendment, which assures that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *United States v. Nakashian*, 820 F.2d 549, 552 (2d Cir. 1987) (alteration and internal quotation marks omitted); *see also United States v. Regensberg*, 604 F. Supp. 2d 625, 629 (S.D.N.Y. 2009) (same).  "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'—in the legal sense, as defined by [the relevant legislative body]—complained of in one count is the same as that charged in another." *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999).  Where, as here, "the same statutory violation is charged twice . . . 'the question is whether the facts underlying each count were intended [by the legislative body] to constitute separate units of prosecution.'" *Regensberg*, 604 F. Supp. 2d at 629 (some internal quotation marks omitted) (quoting *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004)); *see also Serrano v. Kirkpatrick*, No. 11-CV-2825, 2013 WL 3226849, at *14 (S.D.N.Y. June 25, 2013) (applying this standard on habeas review of a conviction under New York law).

In *People v. Alonzo*, 945 N.E.2d 495 (N.Y. 2011), a case decided after Petitioner's trial and appeal, the New York Court of Appeals explained that "[a]s a general rule, . . . where a defendant, in an uninterrupted course of conduct directed at a single victim, violates a single provision of the [New York] Penal Law, he commits but a single crime." *Id.* at 496. Accordingly, the New York Court of Appeals held that an indictment was multiplicitous where it charged the defendant with two separate counts of sexual abuse in the first degree, in violation of New York Penal Code § 130.65, based on the allegation that the defendant touched each victim's breasts and also touched each victim's buttocks—in other words, where the indictment charged a separate count for sexual abuse for each instance of sexual contact. *Id.* at 496–97.  The court

19

explained that "[t]o hold that each . . . movement of the hand may be prosecuted as a separate crime would be contrary to common sense," and the "evidence in [*Alonzo*] clearly show[ed] a single crime of sexual abuse against each victim." *Id.* at 497.  The court cautioned, however, that "[o]ther cases may not be so clear" and "[w]here the evidence reasonably permits a grand jury to find that either one or two crimes occurred, an indictment charging two should not be dismissed." *Id.*

This Court, however, is procedurally barred from deciding whether the counts of sexual abuse as alleged in the Indictment are multiplicitous.  In his reply brief on direct appeal, and in response to the People's suggestion that Petitioner had made an argument that the Indictment should have been dismissed because it was multiplicitous, Petitioner's counsel made clear that "[Petitioner] did not raise an issue of multiplicity," but rather "merely illustrated that both counts in the [I]ndictment were defective because both of them failed to allege any particular facts; that is not an issue of multiplicity and Respondent errs in suggesting otherwise."  (Appellant's Reply 1.)  It is far from surprising, then, that the Appellate Division did not address the question of whether the Indictment was multiplicitous in upholding Petitioner's conviction.  Because this claim could have been raised on direct appeal but was not, and New York procedural rules bar its state courts from hearing such claims in a second appeal or collateral proceeding, *see Sparks*, 2012 WL 4479250, at *4, Petitioner no longer has any available state court remedy, and the unexhausted claims are therefore deemed exhausted, but procedurally barred, *see Carvajal*, 633 F.3d at 104.  Moreover, because a dismissal of a habeas petition on such grounds is a "disposition . . . on the merits," *Aparicio*, 269 F.3d at 90, the Court need not address the claim further because Petitioner has not shown "'cause for the default and prejudice,'" or shown "that he is 'actually innocent' of the crime for which he was convicted," *Carvajal*, 633 F.3d at 104

20

(quoting *Aparicio*, 269 F.3d at 90). Here, there is nothing in the record that convinces the Court that Petitioner is actually innocent of the crimes for which he was convicted. As the R&R makes clear, the evidence against Petitioner was sufficient, as discussed below. Further, Petitioner does not explain cause for the default. Accordingly, any claim that the Indictment is multiplicitous is procedurally barred.[3]

_____

[3] Even if the Court were to address the merits of a claim that the Indictment was multiplicitous because it charged two counts of sexual abuse in the first degree, this claim fails under the stringent standard applied on habeas review. Petitioner was charged with two counts of sexual abuse in the first degree for conduct that occurred on the same day, and the two counts are identically worded. Accordingly, the question here is whether the facts underlying each count were intended by the New York legislature to constitute separate units of prosecution. *See Regensberg*, 604 F. Supp. 2d at 629. To begin, although the New York Court of Appeals's decision in *Alonzo* is relevant, it is not directly on point. At Petitioner's trial, Cabezas testified not only that Petitioner touched her breasts and vagina with his hands, (*see* July 23, 2007 Trial Tr. ("July 23 Tr.") 167–68, 172 (Dkt. No. 14); *see also* July 26 Tr. 438), but also that he had "plac[ed] his penis to [her] vaginal area," (July 23 Tr. 171), and placed his penis around her vagina a second time "in a rubbing motion," (July 23 Tr. 184–85; *see also* July 26 Tr. 439). Accordingly, it is not clear under *Alonzo* that each sexual contact failed to constitute a separate crime. *Alonzo*, 920 N.Y.S.2d at 304; *see also People v. Hernandez*, No. 10479/2011, 2012 WL 4473125, at *3 (N.Y. Sup. Ct. Sept. 25, 2012) (explaining that "[a]lthough it is clear that where touching by hand is involved, sexual contact in the course of one incident will generally give rise only to one count of sexual abuse, none of the . . . cases [citing *Alonzo*] squarely address whether . . . various types of sexual contact, including intercourse, should be treated differently from hand contact," but suggesting in dicta that given the broad definition of sexual contact "it does not appear that every sexual contact during one incident would give rise to separate counts, so long as only one uninterrupted incident is alleged"). It is also worth noting that before considering Petitioner's claim that the Indictment was defective for the second time in this case, the trial court noted that "we had two [incidents] of sexual abuse. [The Victim] claims his fingers were in her vagina and she claims that his penis rubbed on her vagina prior to, she testified, that it penetrated." (July 26 Tr. 439.)

Moreover, as one trial court found relevant in declining to resolve the issue of whether two counts of sexual assault were multiplicitous, "it is not clear [here] that there was in fact only one uninterrupted incident" of sexual abuse in light of Cabezas's testimony. *Hernandez*, 2012 WL 4473125, at *3. Cabezas testified about sexual contact that occurred over a period of time on the day alleged in the Indictment and that was interrupted at least once by a phone call from her place of employment. In light of the New York Court of Appeals's warning that "[w]here the evidence reasonably permits a grand jury to find that either one or two crimes occurred, an indictment charging two should not be dismissed," *Alonzo*, 920 N.Y.S.2d at 304, it is relevant that the trial court, after hearing the testimony, declined to dismiss one or both of the sexual abuse counts, (*see* July 26 Tr. 443). Indeed, whether an incident involved one or two criminal

2.  Ineffective Assistance of Counsel at the *Huntley* Hearing

Next, Petitioner objects to Magistrate Judge Smith's conclusion that any challenge to the performance of Petitioner's counsel at the pre-trial suppression hearing conducted pursuant to *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965) is barred on procedural grounds.  (*See* R&R 9; Pet'r's Obj's 8–12.)

Petitioner did not raise his ineffective assistance claim on direct appeal.  Instead, Petitioner challenged his counsel's performance at the *Huntley* hearing in a motion pursuant to CPL § 444.10, arguing that his conviction should be vacated because "he was denied his rights to effective assistance of counsel when defense counsel failed to . . . elicit important supporting facts and to make the necessary argument to obtain suppression because the proof at the *Huntley*

---

acts under New York Law is "precisely the kind of state court decision to which a federal habeas court must defer."  *Serrano*, 2013 WL 3226849, at *14 (italics omitted) (explaining that the federal habeas court would defer to the decisions of the state courts which determined whether the New York legislature intended "different permutations of primary and secondary victims in multiple-homicide cases . . . to constitute separate units of prosecution" (internal quotation marks omitted)); *see also Timmons*, 2010 WL 3813963, at *8–9 (same).

    In any event, the trial court's decision cannot be said to have been contrary to Supreme Court precedent because there exists no Supreme Court case that has made clear that charging two identical counts of sexual abuse for sexual contact that took place on the same day under New York law is multiplicitous or otherwise violates a defendant's constitutional rights.  *See Serrano*, 2013 WL 3226849, at *15 (explaining that "the state court's decision denying th[e] claim cannot be said to have been contrary to, or an unreasonable application of, clearly established federal law," because "[t]here exists no Supreme Court case that has decided a Double Jeopardy question in the context of units of prosecution and primary and secondary victims, such as contemplated by" the applicable penal statute in that case).  Accordingly, "in an absence of clearly established federal authority on the interaction between this type of [sexual abuse] statute and the Double Jeopardy Clause, the [trial court's] decision [denying this claim] cannot be deemed objectively unreasonable." *Id.* (some alterations in original) (internal quotation marks omitted) (dismissing claim that the indictment was multiplicitous in violation of the Double Jeopardy Clause); *see also Baptiste v. Ercole*, 766 F. Supp. 2d 339, 356 (N.D.N.Y. 2011) ("The ultimate question under the AEDPA is whether the Appellate Division unreasonably applied clearly established *Supreme Court* precedent.").  For the foregoing reasons, then, Petitioner's challenges to the Indictment, even if exhausted, are insufficient for the writ to issue.

hearing did not establish beyond a reasonable doubt that [Petitioner] underst[oo]d the *Miranda* warning in English or in Spanish." (Def.'s § 440.10 Motion (Aff. in Supp.) 1.) In a Decision and Order dated September 17, 2009, the trial court denied Petitioner's § 444.10 Motion because Petitioner was in a position to raise the issues underlying his motion in his appeal to the Appellate Division, but failed to do so, and the claims that Petitioner raised involved matters of record that should have been litigated on direct appeal, as provided by CPL § 440.10(2)(c). (*See* Rockland County September 17 Order.)

In *Coleman v. Thompson*, 501 U.S. 722 (1991), "the Supreme Court reaffirmed the well-settled principle that when a 'state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (quoting *Coleman*, 501 U.S. at 750). Nevertheless, "procedural default in the state court will only bar federal habeas review when 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,'" and, therefore, a federal habeas court must "determine[] whether the state court judgment rests on such an independent and adequate ground." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "If a state court's disposition of [a] federal claim rests upon a state-law ground that is independent of the federal question and adequate to support the judgment, the [habeas court] will not review that claim." *Fernandez v. Sheahan*, No. 12-CV-2735, 2015 WL 4771958, at *8 (E.D.N.Y. Aug. 11, 2015) (internal quotation marks omitted). A state-law ground is "adequate only if it is firmly

established and regularly followed by the state." *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) (alterations and internal quotation marks omitted).

New York Criminal Procedure Law § 440.10 provides grounds for which a court may vacate a judgment of conviction after such a judgment has been entered.  However, the statute also provides that a court may deny a § 440 motion where "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, [and] no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."  N.Y. Crim. Proc. Law § 440.10(2)(c).  "The purpose of this rule 'is to prevent Section 440.10 from being employed as a substitute for direct appeal when the defendant was in a position to raise an issue on appeal or could have readily raised it on appeal but failed to do so.'"  *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (alterations omitted) (quoting *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986)).  Moreover, a court may deny a motion to vacate when "[u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so," although the court, "in the interest of justice and for good cause shown . . . may in its discretion grant the motion if it is otherwise meritorious."  N.Y. Crim. Proc. Law § 440.10(3)(c).

Here, the Rockland County Court expressly relied on New York Criminal Procedure Law §§ 440.10(2)(c) and 440.10(3)(c) in denying Petitioner's § 440.10 motion.  This "express reliance on a state procedural rule constitutes an independent state law ground for [the state court's] decision."  *Gilford v. Racette*, No. 13-CV-5881, 2015 WL 4639975, at *19 (S.D.N.Y. Aug. 5, 2015) (report and recommendation).  Moreover, CPL "§ 440.10(2)(c) . . . is a 'firmly

established and regularly followed' state procedural ground barring federal habeas review." *Id.* (collecting cases); *see also Aparicio*, 269 F.3d at 91 ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal.").  This procedural rule includes record-based claims of ineffective assistance of counsel.  *See McDowell v. Heath*, No. 09-CV-7887, 2013 WL 2896992, at *4 (S.D.N.Y. June 13, 2013) ("Record-based ineffective assistance of trial counsel claims, however, may be brought on direct appeal and when a petitioner fails to do so, rejection by a section 440.10 court is an independent and adequate ground precluding the petitioner from bringing the claim in a federal habeas petition."); *see also Spurgeon v. Lee*, No. 11-CV-600, 2015 WL 4610021, at *11 (E.D.N.Y. July 31, 2015) (explaining that the "§ 440.10 court concluded that [the petitioner's] ineffective assistance of counsel claim was procedurally barred under CPL § 440.10(2)(c) because the issues raised appeared in the trial record and, thus, the claim could have been raised on direct appeal").

Petitioner is correct that "New York courts have held that some ineffective assistance claims are 'not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can help develop the necessary evidentiary record." *Sweet*, 353 F.3d at 139 (quoting *People v. Harris*, 491 N.Y.S.2d 678, 687 (App. Div. 1985)); *see also Jones v. Bradt*, No. 13-CV-6260, 2015 WL 506485, at *4 (W.D.N.Y. Feb. 6, 2015) (explaining that "sometimes ineffective assistance claims are based on matters *dehors* the record and properly raised in a collateral motion rather than on direct appeal"); *McCollough v. Bennett*, No. 02-CV-5230, 2010 WL 114253, at *7 (E.D.N.Y. Jan. 12, 2010) (analyzing "whether [a] failure to lay a proper foundation for a business record through a foundation witness is an 'off-record' matter" that would warrant collateral review); *Quinones v. Miller*, No. 01-CV-10752, 2003 WL

21276429, at *21 (S.D.N.Y. June 3, 2003) ("[U]nder New York law, ineffective counsel claims involving matters outside the record—including claims of conflict of interest—must be pursued by way of a CPL 440.10 motion" (internal quotation marks omitted)), *adopted by* 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005). "Claims are record-based when a reviewing court could conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL 440.10." *McDowell*, 2013 WL 2896992, at *5 (internal quotation marks omitted).

To the extent Petitioner presses the ineffective assistance of counsel claim based on the grounds that he pursued in his § 440.10 Motion—specifically that his trial counsel failed to elicit important supporting facts and make the necessary arguments at the *Huntley* hearing—the Court agrees with Magistrate Judge Smith's conclusion that these claims are record-based and, therefore, as the state court found, procedurally barred. (*See* R&R 13–14.) In his § 440.10 Motion, Petitioner argued that his trial counsel was ineffective for failing to object to the fact that Detective Roxanne Lopez ("Detective Lopez"), who interviewed and recorded statements made by Petitioner, was not a certified translator and, therefore, Petitioner did not understand his *Miranda* rights. (Def.'s § 440.10 Motion (Mem. of Law) 2–6.) Petitioner also argues that defense counsel was ineffective for not raising the argument that Detective Lopez failed to give Petitioner his *Miranda* rights in a timely manner. (*Id.* at 4–5.) These claims are belied by a review of the transcript at the *Huntley* hearing. During the hearing, Petitioner's counsel argued for suppression of Petitioner's written statement, his oral statement, and a video statement made by Petitioner because Petitioner did not knowingly and intelligently waive his *Miranda* rights before giving these statements. (May 9, 2007 Hearing Tr. ("May 9 Tr.") 147–48 (Dkt. No. 13).)

26

Petitioner's counsel discussed the fact that Petitioner was not provided with a translator or other language assistance despite his difficulty in understanding and speaking English, (*id.* at 147–49), addressed the inconsistencies in Detective Lopez's testimony, (*id.* at 149–50), and pressed the argument that Petitioner was not given his *Miranda* rights explicitly and/or in a timely manner, (*id.* at 149–52). Accordingly, a reviewing court could evaluate Petitioner's claims that his counsel was ineffective for failing to adequately address whether he was given and/or understood his *Miranda* rights and by examining the transcript of the *Huntley* hearing.

In his § 440.10 Motion, Petitioner also argued that defense counsel failed to object to the conversation that was recorded between himself and Cabezas. (Def.'s § 440.10 Motion (Mem. of Law) 4–5.) Again, this contention is undercut by the transcript of the *Huntley* hearing, during which Petitioner's counsel argued that the conversation between Petitioner and Cabezas should be suppressed because Cabezas was acting as an agent for the police. (May 9 Tr. 8.) Because a reviewing court could examine the alleged deficiencies on which Petitioner bases his ineffective assistance of counsel claim, the facts underlying this claim—to the extent it is based on these allegations of deficient performance—are not outside of the record or are necessarily record-based and, therefore, procedurally barred. *See McDowell*, 2013 WL 2896992, at *24 (explaining that a claim of ineffective assistance of counsel was record-based because "[t]he purported weakness of [the] suppression motion, which failed to trigger a hearing, was apparent on its face," and "the full record of the trial testimony was adequate to permit a reviewing court to determine whether defense counsel had had a compelling basis to pursue a more pointed, and potentially meritorious, suppression motion"); *Alston*, 461 F. Supp. 2d at 124 (explaining that the petitioner's "claims of ineffective assistance of trial counsel all relate[d] to alleged errors by counsel that [were] apparent on the face of the record—namely, a failure to make a pre-trial

omnibus motion, a failure to question why counts three and five of the indictment were not dismissed, and a failure to object to the jury's verdict").

In his Objections, Petitioner also argues that his ineffective assistance claim is not record-based because his counsel "failed to bother to investigate the facts leading to the creation of the statements by questioning [P]etitioner as to what the officers had done during their questioning of him," (Pet'r's Obj's 9), and that this failure led to the prosecution's withholding of *Rosario* material, (*see id.* at 10).  In *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961), "the New York Court of Appeals held that a right sense of justice entitles a defendant to inspect the prior statements of a prosecution witness, prior to cross-examination, whether or not his statements vary from his testimony on the stand."  *Flores v. Demskie*, 215 F.3d 293, 300 (2d Cir. 2000) (internal quotation marks omitted).  As an initial matter, the Court notes that to the extent that Petitioner raises a claim based on *Rosario*, "[a] *Rosario* violation is an issue of state law that is not cognizable on habeas review."  *Pereira v. Superintendent, Wyo. Corr. Facility*, No. 04-CV-3445, 2005 WL 2038618, at *7 (E.D.N.Y. Aug. 22, 2005); *see also Johnson v. Filion*, 232 F. Supp. 2d 98, 100 (S.D.N.Y. 2002) ("Failure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of state law." (internal quotation marks omitted)).  Further, although a habeas court can review an ineffective assistance of counsel claim based on a failure to pursue a viable *Rosario* claim, *see, e.g., Flores*, 215 F.3d at 303–04 (analyzing an ineffective assistance of counsel claim based on defense counsel's waiver of a *Rosario* claim), Petitioner raises the claim that his trial counsel was ineffective for failing to question Detective Lopez about possible *Rosario* material for the first time in his Objections, and, accordingly, the claim is unexhausted for purposes of federal habeas review.  *See Warren v. Goord*, No. 06-CV-1423, 2013 WL 1310465, at *18 (E.D.N.Y. Mar. 28, 2013) (explaining that because "[t]he

ineffectiveness claim . . . before th[e] [federal] [c]ourt [was] different in character from

petitioner's earlier claim: he [did] not mention his attorney's failure to obtain *Rosario* material,

but rather his attorney's refusal to let him testify or communicate with the media," the claim was

unexhausted); *Lowman v. New York*, No. 09-CV-58, 2011 WL 90996, at *10 (W.D.N.Y. Jan. 11,

2011) ("Because Petitioner raises [a *Rosario*] claim for the first time in his habeas petition, it is

unexhausted for purposes of federal habeas review.").  Moreover, "[n]o purpose would be served

by requiring [P]etitioner to return to state court for further proceedings before

considering . . . [this] claim raised in his habeas petition."  *Grey v. Hoke*, 933 F.2d 117, 120 (2d

Cir. 1991).  Here, Petitioner has already made one request for leave to appeal to the New York

Court of Appeals, *see id.* (citing N.Y. Court Rule § 500.10(a)), and he has filed a motion

pursuant to CPL § 440.10, in which he failed to raise the claim, and Petitioner offers no

justification for that failure, *see Warren*, 2013 WL 1310465, at *19 (explaining that "[a] motion

to vacate on ineffectiveness grounds would fall under the mandatory dismissal provision of [CPL

§ 440.10]" where the petitioner already made motions to vacate his conviction pursuant to that

statute).  Because Petitioner no longer has a state court forum available to him within which to

exhaust the claim, the Court deems the claim exhausted but procedurally defaulted.[4]

     Accordingly, "Petitioner's ineffective assistance of counsel . . . claims

are . . . procedurally barred and reviewable by this court only if petitioner has shown cause and

prejudice or a fundamental miscarriage of justice."  *Spurgeon*, 2015 WL 4610021, at *11; *see*

---

[4] In any event, Petitioner fails to explain how, if at all, Detective Lopez's alleged failure
to disclose "what she did with the first statement," (Pet'r's Obj's 10), that Petitioner allegedly
signed prejudiced Petitioner in any way.  *See Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir.
2010) (explaining that "ineffective assistance has two necessary components: the defendant must
establish both that his attorney was ineffective and that the attorney's errors resulted in prejudice
to the defendant").

*also Grey*, 933 F.2d at 121 (explaining that as to a claim that the court deemed exhausted but procedurally defaulted, the forfeiture "bar[red] [the petitioner] from litigating the merits of [his] claim[] in [the] federal habeas proceeding[], absent a showing of cause for the procedural default and prejudice resulting therefrom"); *Pearson v. Rock*, No. 12-CV-3505, 2015 WL 4509610, at *8 (E.D.N.Y. July 24, 2015) ("Because Petitioner's claim is procedurally defaulted, this court can review it on the merits only if Petitioner demonstrates either: (1) cause for and prejudice resulting from the default . . . or (2) that he is actually innocent").  Again, there is nothing that convinces the Court that Petitioner is innocent.  Moreover, Petitioner does not claim that his appellate counsel was ineffective in failing to raise this claim.  Indeed, Petitioner offers no explanation for his failure to pursue his claim of ineffective assistance of counsel based on arguments that his trial counsel made or failed to make during the *Huntley* hearing.  Although Petitioner argues that his pro se status in filing his § 440.10 Motion is relevant, (Pet'r's Obj's 11), Petitioner was represented by appellate counsel at the direct review stage.  It is also worth noting that Petitioner had different appellate counsel than his trial counsel and, therefore, there was no obvious reason that Petitioner could not pursue an ineffective assistance of counsel claim on direct review.  *See Bradt*, 2015 WL 506485, at *4 (explaining that the relevant claim was not outside of the scope of the record because the "trial counsel's ineffectiveness [was] premised on his failure to move to preclude certain testimony, and thus his error . . . was reflected within the record, making it an appropriate claim to raise on direct appeal, especially given that [the] [p]etitioner had new appellate counsel"); *Alston*, 461 F. Supp. 2d at 124 (explaining that the petitioner "had different appellate counsel; he was not represented on appeal by his trial counsel who, understandably, could not be expected to argue his own ineffectiveness"); *DeFeo v. United States*, 153 F. Supp. 2d 453, 457 (S.D.N.Y. 2001) (explaining that collateral review of an

ineffectiveness claim is barred "where (1) the movant was represented by new appellate counsel

on direct appeal, and (2) the claim is based solely on evidence in the trial record" because "while

trial attorneys cannot be expected to argue their own ineffectiveness on appeal, newly retained

attorneys have no such excuse").  The claims that Petitioner's trial counsel was ineffective for

failing to make certain arguments, or ask certain questions at the *Huntley* hearing, then, are

procedurally barred and unreviewable.

### 3.  Jury's Questions

Petitioner claims that the trial court's failure to "meaningfully respond" to the jury's

questions regarding the sexual abuse counts deprived Petitioner of a fair trial.  (Pet. Attachment

A at i.)  Petitioner objects to Magistrate Judge Smith's conclusion that this claim is procedurally

barred.  (Pet'r's Obj's 12.)

During its deliberations in Petitioner's case, the jury sent a note to the trial court, asking:

"Why are there two counts of sexual abuse in the first degree?"  (July 26 Tr. 437.)  The trial

judge stated that she "anticipated this type of question," and explained why.  (*See id.* at 437–38.)

In relevant part, the trial judge explained that:

> [T]he Court should not highlight testimony or aspects of testimony.  I was afraid
> this would come up.  And the only thing I can do is charge them on sexual abuse
> again.  And the only other thing I can think is that I can tell them that if they believed
> that sexual abuse took place, either they don't believe it took place at all or they
> believe it happened more than once.  I don't know.  That's a difficult thing without
> specifically telling them it can be hand to vagina and then it can be hand to breast
> or it can be penis to vagina.  I mean, the testimony, the read-back, obviously if they
> are to believe her testimony, and I only use this for an example, we had two
> incidences of sexual abuse.  She claims his fingers were in her vagina and she
> claims that his penis rubbed on her vagina prior to, she testified, that it penetrated.
> So—but I don't like to highlight testimony or—I don't—I don't know other than to
> re-charge them.

(*Id.* at 438–39.)  In response to the trial court's invitation for suggestions from counsel on how to

answer the jury's question, Petitioner's counsel stated:  "I don't have any particular request other

31

than I'll just rest with the Court's discretion.  I think re-reading the charges they'll have to

determine from the facts—the facts and the law." (*Id.* at 439.)  After the prosecutor suggested

that the trial court "say something that [the jury is] to determine . . . what, if any, parts of [the

victim's] body were touched," (*id.* at 440), Petitioner's counsel discussed why, in his view, the

Indictment was deficient because it did not allege which parts of the body Petitioner touched, (*id.*

at 441–43).  Ultimately, Petitioner's counsel stated that "the charge itself . . . has a definition of

sexual contact [that] means 'any,'" and he did not "know why there would be any further

explanation [as to what] sexual contact means." (*Id.* at 442.)  The trial judge responded "[t]hat's

fine," and explained that she would "re-charge them on sexual abuse and tell them they are to

consider all the evidence for all the counts in the indictment." (*Id.* at 442–43.)  Petitioner's

counsel renewed his request that the counts of sexual abuse be dismissed as jurisdictionally

defective, which the trial court denied.  (*Id.* at 443.)  The trial court then charged the jury again

on the two counts of sexual abuse in the first degree.  (*Id.* at 445–49.)

Subsequently, the jury sent a second note asking, "What does it mean when there are two

counts of the exact same charge?" (*Id.* at 450.)  The trial court noted that the question was the

"same question [the jury] asked before, just asked a different way." (*Id.*)  Petitioner's counsel

stated:

> Notwithstanding my objections, Judge, my suggestion is that [the jury] be advised
> that the People are alleging more than one count of sexual abuse in the first degree
> which means that, . . . based on the evidence you may determine . . . that there was
> one or more or none or no sexual touching.  But the People are alleging because of
> the existence of two counts they are alleging there were two incidences [sic] of
> sexual touching as is defined in sexual abuse in the first degree.  But this is not a
> suggestion or an indication that you have to find such, just that the People are
> alleging some sort of balanced charge like that, Judge.

(*Id.* at 451–52.)  The Court agreed to the suggestion.  (*Id.* at 452.)  Specifically, the Court

instructed:

32

> The People have alleged and have the burden of proof to prove beyond a reasonable doubt that more than one inciden[t] of sexual conduct occurred.  As I have previously charged you on sexual abuse in the first degree I have previously given you the definition of sexual contact.  You must determine . . . whether or not any sexual contact was proven.  Again, the People bear the burden of proof beyond a reasonable doubt that any sexual contact did or did not take place, and if more than one incident took place you as the finders of the fact must make that determination by deliberating upon all the evidence in this case.

(*Id.* at 453–54.)  The Court then re-read the elements of sexual abuse in the first degree.  (*See id.* at 454–57.)

Petitioner raised the claim that the trial court failed to meaningfully respond to the jury's notes on direct appeal.  (*See* Appellant's Br. 37–39.)  In response, the People argued that Petitioner failed to preserve his claim for appellate review because while "counsel . . . raised an objection to the legal sufficiency of the sexual abuse charges themselves," he did not raise an objection "to the court's proposed response."  (Appellee's Br. 29–31.)  Appellate counsel did not respond to the People's argument of procedural default in the reply brief.  (*See* Appellant's Reply.)  Citing CPL § 470.05(2), the Appellate Division held that "defendant's contention that the trial court did not adequately respond to jury notes requesting clarification is unpreserved for appellate review . . . ."  *Rodriguez*, 880 N.Y.S.2d at 89.  "The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground."  *Moore v. Conway*, No. 08-CV-6390, 2010 WL 4117411, at *7 (W.D.N.Y. Oct. 20, 2010) (citing *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)); *see also Ortiz v. Bradt*, No. 13-CV-5420, 2013 WL 5775695, at *2 (E.D.N.Y. Oct. 25, 2013) ("It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review." (citing *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011))).  Because the Appellate Division relied on CPL § 470.05(2),

this Court is procedurally barred from addressing the merits of this claim. *See Moore*, 2010 WL 4117411, at *7.

In his Objections, Petitioner argues that his trial counsel did, in fact, object to the trial court's responses to the relevant jury notes. (*See* Pet'r's Obj's 13–14.) In other words, Petitioner claims that the Appellate Division erred in concluding that this claim was procedurally barred. The Court acknowledges that after the first jury note, trial counsel pressed his argument that the Indictment was jurisdictionally defective and prefaced his suggestion to the second jury note with the phrase "[n]otwithstanding my objections." (July 26 Tr. 451.) Nevertheless, from the transcript it is clear that trial counsel's objections were directed at the sufficiency of the Indictment, not at the substance of the trial court's response to the jury's notes. Indeed, as explained above, the trial court followed the suggestions of Petitioner's trial counsel as to each note. Even assuming it is somewhat ambiguous whether Petitioner's trial counsel objected to this claim, the Appellate Division was squarely presented with the issue of whether the objection was preserved and decided that it was not. In light of this decision and, at most, the ambiguity of trial counsel's response to the jury notes, this Court defers to the Appellate Division's determination that CPL § 470.05(2) bars this claim. *See Downs*, 657 F.3d at 105–06 (explaining that were the court "sitting as judges of the Appellate Division, [it] may well have found [petitioner's] claim preserved[ b]ut it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and, therefore, concluding that "[g]iven the ambiguity of counsel's comments and the limited state-court record, the Appellate Division had a legitimate basis to conclude that [the relevant] claim on appeal was not preserved"). Because "the Appellate Division properly relied on a procedural bar, [P]etitioner would have to show that grounds exist for reaching the merits notwithstanding that procedural bar." *Ortiz*, 2013 WL

5775695, at *2.   As noted, to overcome this default on state procedural grounds, Petitioner must

show "'cause for the default and prejudice' or . . . that he is 'actually innocent' of the crime for

which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90).   Again,

there is nothing in the record that convinces the Court that Petitioner is actually innocent of the

crimes for which he was convicted, and Petitioner does not offer cause for the default.   The

Court, therefore, agrees with Magistrate Judge Smith that this claim is procedurally barred.

### 4.  Sufficiency of the Evidence

Petitioner challenges Magistrate Judge Smith's conclusion that his claim of insufficient

evidence should be dismissed.  (Pet'r's Obj's 15–16.)  Petitioner argues that there was

insufficient evidence in the record to support a conviction for attempted rape in the first degree.

(*Id.* at 15; *see also* Pet'r's Br. in Resp. to Resp't's Br. in Opp'n to Habeas Corpus Pet. 20 (Dkt.

No. 33).)  Petitioner's trial counsel moved for dismissal with respect to each count of the

Indictment upon the grounds that the evidence was legally insufficient to establish each and

every element of the crimes, (July 26 Tr. 254), which the trial court denied as to, among other

counts, attempted rape in the first degree, (*id.* at 291).  Petitioner also raised this claim on direct

appeal.  The Appellate Division found that the evidence, viewed in the light most favorable to

the prosecution, "was legally sufficient to establish the defendant's guilt beyond a reasonable

doubt," and concluded that based on its "independent review pursuant to CPL 470.15(5), [it was]

satisfied that the verdict of guilt was not against the weight of the evidence." *Rodriguez*, 880

N.Y.S. 2d at 89–90.  The Court finds that the Appellate Division's decision was neither contrary

to, nor an unreasonable application of clearly established federal law, nor was it "based on an

unreasonable determination of the facts in light of the evidence presented in the State Court

proceeding." *Epps*, 687 F.3d at 50 (internal quotation marks omitted).

35

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Moreover, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Id.* (internal quotation marks omitted). In other words, a habeas petitioner must overcome "this twice-deferential standard" to prevail on a sufficiency of evidence challenge. *Id.*; *see also Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) ("When a federal habeas petition challenges the sufficiency of the evidence to support a state-court conviction, AEDPA establishes a standard that is 'twice-deferential.'" (quoting *Matthews*, 132 S. Ct. at 2152)). In other words, juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts, . . . and on habeas review a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.* at 148 (citations, internal quotation marks, and italics omitted).

Here, Petitioner challenges the sufficiency of the evidence to support his conviction of attempted rape in the first degree. Under New York Law, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00. "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person[] . . . [b]y forcible compulsion." *Id.* § 130.35(1). There is ample evidence based on Cabezas's testimony that supports Petitioner's conviction for attempted rape in the first degree, which Magistrate

Judge Smith aptly summarized in the R&R.  (*See* R&R 18.)  Moreover, as Magistrate Judge

Smith explained, the prosecution introduced Petitioner's statement into evidence, which

corroborated Cabezas's version of events.  (*See id.*; *see also* July 25, 2007 Trial Tr. ("July 25

Tr.") 118–124.)   Petitioner argues that Cabezas's testimony was incredible as a matter of law

and that he did not have the requisite level of intent to be found guilty of attempted rape in the

first degree.  In particular, Petitioner claims that because, among other things, Petitioner and

Cabezas had been in a long-term relationship, Petitioner had keys to Cabezas's house, Petitioner

made clear that he did not want to rape Cabezas, and Cabezas was calm when she spoke on the

phone with her employer during the incident, the evidence was not sufficient to support a

conviction of attempted rape in the first degree.   (*See* Pet'r's Obj's 15; *see also* Appellant's Br.

41–42.)  The jury heard Cabezas testify to the details that Petitioner highlights here and

nonetheless credited Cabezas's testimony and found Petitioner guilty.   "The law is well

established that questions of witness credibility are jury questions and a federal habeas court may

not reassess the jury's findings of credibility."  *Black v. Conway*, No. 11-CV-480, 2011 WL

2610530, at *9 (S.D.N.Y. June 30, 2011), *adopted by* 2012 WL 6629050 (S.D.N.Y. Dec. 20,

2012).  In light of the ample evidence of Petitioner's guilt, the Court concludes that as the triers

of fact, a rational jury could find the essential elements of the crime beyond a reasonable doubt

and the state courts' decisions rejecting the sufficiency challenges were not objectively

unreasonable.  *See Matthews*, 132 S. Ct. at 2152.  Accordingly, Petitioner's sufficiency claim

fails.

### 5.  Petitioner's Sentence

Finally, in his Objections, Petitioner argues that although his sentence falls within "its

legal bounds," the sentence is, nonetheless, excessive.  (Pet'r's Obj's 16–17.)  As an initial

37

matter, to the extent that Magistrate Judge Smith found that this claim was, at least in part, procedurally barred, the Court disagrees.  (*See* R&R 20–21.)  In Petitioner's brief to the Appellate Division, he argued that his sentence was harsh and excessive and should be reduced or modified.  (Appellant's Br. 46–48.)  Petitioner stated that he was "protected against cruel and unusual punishment by both the United States and the New York Constitution[s]," and "[t]he power of the Appellate Court to reduce or modify a sentence, which it finds unduly harsh or severe, in the interest of justice and impose a lesser one, has long been recognized by New York State."  (*Id.* at 47.)  The Court finds that this language was "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d at 192, and apprised the Appellate Division "of both the factual and the legal premises of the claim [Petitioner] asserts [here]," *Vacco*, 126 F.3d at 413 (some alterations in original) (internal quotation marks omitted), specifically that Petitioner's sentence was excessive.  Indeed, although citing only to New York state case law, the Appellate Division concluded that "[t]he sentence imposed was not excessive."  *Rodriguez*, 880 N.Y.S.2d at 90.  The Court, therefore, finds that this claim is not procedurally barred for failure to exhaust.

Nonetheless, this claim fails.  "It is well-established that an excessive sentence claim will not prevail as a ground for habeas corpus relief if the imposed sentence was within the limits prescribed by state law." *Thompson v. Lord*, 322 F. Supp. 2d 300, 301 (E.D.N.Y. 2004) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)); *see also Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (same).  Petitioner was convicted of attempted rape in the first degree, a class C felony, *see* N.Y. Penal Law § 130.35 ("Rape in the first degree is a class B felony."); *id.* § 110.05(4) (explaining that an attempt for a crime is a class C felony when the crime attempted is a class B felony), for which Petitioner faced a determinate sentence of not less than three and one-half and not more than 15 years in state prison, *see id.* § 70.80(4)(a)(ii).  For

this conviction, the trial court sentenced Petitioner to 13 years in prison. (*See* Sentence Tr. 22.) Petitioner was convicted of two counts of sexual abuse in the first degree, class D felonies, *see* N.Y. Penal Law § 130.65, for which Plaintiff faced a determinate sentence of not less than two years and not more than seven years, *see id.* § 70.80(4)(a)(iii). For these counts, Petitioner received a sentence of five years each, to be served concurrently. (*See* Sentencing Tr. 22.) Finally, Petitioner was convicted of two counts of unlawful imprisonment in the second degree, class A misdemeanors, *see* N.Y. Penal Law § 135.05, for which Petitioner faced a definite sentence not to exceed one year, *see id.* § 70.15(1). The trial court sentenced Petitioner to one year for each count of unlawful imprisonment, to run concurrently. (*See* Sentencing Tr. 22–23.) Because Petitioner's sentences fell "squarely within the range prescribed by state law," the trial court was within its discretion to impose these sentences and, accordingly, Petitioner's claim is not cognizable on habeas review. *Thompson*, 322 F. Supp. 2d at 301; *see also Pina*, 239 F. Supp. 2d at 289 (same).

## III.  CONCLUSION

For the reasons stated above, the Court adopts the Report & Recommendation in substantial part and modifies it in part. Petitioner's petition for a writ of habeas corpus is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010)

(citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court

certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent

and to close the case.

SO ORDERED.

DATED: October 28, 2015
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE